[Civ. No. 24524. Second Dist., Div. Three. Dec. 16, 1960.]

TURLOCK FROZEN FOODS, INC. (a Corporation), Plaintiff and Respondent, v. EDWARD GROM, Appellant; PERRIN C. MILLER AND COMPANY (a Corporation) et al., Cross-defendants and Respondents.

Lee W. Landrum for Appellant.

Carlos J. Badger for Plaintiff and Respondent.

Earl S. Patterson and William P. Mealey for Cross-defendants and Respondents.

VALLÉE, J.—Appeal by defendant from an adverse judgment in an action for the agreed value of ollali berries sold by plaintiff to defendant.[1] The defense was that the sale was by sample, and the berries did not correspond to the sample. The court found the sale was by description and the berries corresponded to the description—United States Department of Agriculture Grade B or better.

 The only question is whether the finding that the sale was by description is supported by the evidence.

Plaintiff was engaged in processing and selling frozen berries. Its office and plant facilities were in Turlock. Defendant, an individual doing business in Los Angeles under the name Apple Processors, processed and distributed fruit fillings to pie bakers. Jack E. Shaw was a salesman for Perrin C. Miller and Company, food brokers. Both are named together with plaintiff, as cross-defendants in the cross-complaint filed by defendant for breach of contract and reimbursement for the purchase price advanced for part of the berries.

In June of 1957 Mr. Shaw was authorized by Mr. William Jones, president of plaintiff, to offer for sale at 14½ cents a pound a quantity of 1,000 to 1,500 30-pound cases of frozen ollali berries which were being processed for plaintiff in Turlock. Shaw obtained samples of the ollali berries from plaintiff. He called on defendant, showed him the berries and probably left some with him as was his custom. He did not tell defendant where he had obtained the samples. They discussed the use of ollali berries for pie filling. About a week or 10 days later defendant told Shaw he could use ollali berries and wanted to know if Shaw could find 1,000 or 1,500 cartons.

---

[1] Ollali berries are also known as California blackberries.

Shaw told him plaintiff was packing about that quantity and he would call and try to arrange the purchase. Shaw called Mr. Jones who told him they had only 1,182 cases packed at that time, he thought the total would not be over 1,500, and he would give the entire pack to Apple Processors. Defendant said he would take them. The next day, on June 27, 1957, Shaw wrote a sales memorandum covering 1,182 cases and forwarded the original to defendant and a duplicate original to plaintiff. It is set out in the margin.[2]

[2]"Sales Memo

PERRIN C. MILLER & Co.
Frozen Food Brokers S/M No. 4081
Telephone 3723 Wilshire Boulevard
DUnkirk 1-3031 Los Angeles 5, California Date 6/27/57

Sold to: APPLE PROCESSORS Terms: Net Cash
 6001 South Gramercy Place F.O.B.: Turlock
 Los Angeles 47, Calif. Ship Via: Gould Truck
 Draft Thru: Seller to Invoice

For Account of: TURLOCK FROZEN FOODS Co.
 P. O. Box 528
 Turlock, Calif.

This transaction shall be considered as executed in the City of Los Angeles, State of California

| Quantity | Size | Item | Price | Unit |
|---|---|---|---|---|
| 1182 | 30# ctns. | GRIFFIN I.Q.F. Ollali Blackberries Grade B or Better | 14½¢ | lb. |

Free Storage to July 15.
Buyer will take all additional fruit at same price up to 1500 cartons.
Send draft to:
 Citizens Bank
 54th & Western
 Los Angeles, Calif.
Draft for payment on July 30, 1957.

JES-cl THIS MEMORANDUM BECOMES A SALES CONTRACT
 (Please read carefully) PERRIN C.
 MILLER & Co.

 This transaction, including any special terms
 in connection therewith, is subject to con- By Jack E. Shaw
 firmation by the Seller if not previously con-
 firmed through us. Unless this office is advised
 immediately by Seller or Buyer that this
 Memorandum is in any respect incorrect or
 unacceptable, it shall be conclusively pre-
 sumed to be a valid Sales Contract between
 Seller and Buyer. As such it shall remain in
 full force and effect until fulfilled or until
 cancelled in writing by both parties. Associ-
 ate Brokers must be governed accordingly.
 If a formal, written contract shall be signed
 by Seller and Buyer then this Sales Contract
 shall become void.''

Shaw and defendant had had similar dealings for two and a half or three years. Shaw testified how a sale by sample was handled: ''Generally, the practice is that you have a certain buyer who is interested in a certain amount of fruit. Let's say it's a thousand cans of Shasta variety strawberries, and in the body of the Sales Memo such as we have here, we write up a thousand cartons—or a thousand cans of Shasta Variety strawberries subject to a five tin sample, subject to be shipped on such and such a date for buyer's approval. Then he has the opportunity to look at that fruit and accept it or reject it within a certain specified period of time. And this is the way we always sell as per sample.'' He testified how a sale by description was handled: ''Generally a buyer calls and he says, 'I want a certain amount of a certain item.' And we write up a Sales Memo. We know where it is. We get it for them or we, in the course of our work, we find a buyer for a certain item and we sell it to him. Q. And in such a sale is the grade specified? A. Yes, always. If it's Grade Not Specified, if it's Grade B, it's so specified.''

Defendant received the sales memorandum, looked at the amount, size, price, and filed it without objection. He testified he had had previous dealings with Perrin C. Miller and Company and was acquainted with the written provision on the bottom of the sales memorandum that acceptance of the memorandum without objection would constitute an agreement between the seller and buyer. Plaintiff forwarded to a Los Angeles bank a warehouse receipt for 1,182 cases of berries which were in storage in Turlock with a sight draft drawn on Apple Processors for $5,141.70. The sight draft was paid. Defendant withdrew 300 cartons from the warehouse on July 8, 1957. Shortly thereafter plaintiff advised Perrin C. Miller and Company that an additional 171 cases had been packed. Plaintiff and defendant each received a second sales memorandum dated July 16, 1957, covering that quantity of berries. Defendant examined and filed it as he had the earlier one. Plaintiff forwarded a warehouse receipt for 171 cases and an invoice dated August 6, 1957 for $743.85 to defendant. The invoice was not paid. In October or November, 1957 Mr. Jones called defendant in an attempt to collect this amount. At that time defendant informed him he had told Shaw he could not use the berries for pies and would not accept them.

Shaw testified defendant called him when the 300 cases were received and complained they were not the same as the sample. Later Shaw suggested that if defendant believed the berries were not what they were supposed to be he could have

his own inspection by the United States Department of Agriculture and if they graded them less than Grade B, "we can kick the whole deal over. . . ." About 10 days later defendant informed Shaw the department had graded the berries as Grade B.

A certificate of the United States Department of Agriculture showing the berries were Grade B or better on inspections made at the time of packaging was introduced in evidence. Defendant received all of the berries of that grade packed by plaintiff that season.

It is manifest from the facts we have related and shown by the evidence that the finding that the sale was by description is amply supported by the evidence.

Since the evidence supports the finding that the sale was by description section 1736 of the Civil Code which provides that in the case of a sale by sample there is an implied warranty the bulk shall correspond with the sample in quality has no application.

Defendant appealed from the nonappealable order denying a new trial. This appeal will be dismissed.

The appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.